Todd M. Friedman (SBN 216752)
Meghan E. George (SBN 274525)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
mgeorge@toddflaw.com
abacon@toddflaw.com
***Attorneys for Plaintiffs***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARLON ROMERO,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**ROCKET MORTGAGE, LLC;** DOES 1-10 Inclusive**,**<br><br>Defendant. | **Case No.:** 5:22-cv-1323<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.     MARLON ROMERO ("Plaintiff"), brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of ROCKET MORTGAGE, LLC ("Defendant"), in negligently contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") and related regulations.  Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other

matters, upon information and belief, including investigation conducted by his attorneys.

2.     The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls and messages are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.    TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4.     Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

5.     In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a

telephone number using a random or sequential generator **or** to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

6.     In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* at 1171-72 fn. 7.

7.     Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

8.     The Sixth Circuit has also recognized this distinction: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons' on the other." *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737,743 (6th Cir. 2013).

9.     Similarly, the FTC has observed that "prerecorded calls are by their very nature one-sided conversations, and if there is no opportunity for consumers to ask questions, offers may not be sufficiently clear for consumers to make informed choices before pressing a button or saying yes to make a purchase." 73 FR 51164-01, 51167 (Aug. 29, 2008).

### JURISDICTION AND VENUE

10.     Jurisdiction is proper under 28 U.S.C. § 1331 because this action

arises under a federal statute, namely the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

11.     Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b) and 1441(a) because Defendant does business within the state of California and Plaintiff resides within this district.

## PARTIES

12.     Plaintiff is, and at all times mentioned herein, was a citizen and resident of the State of California.  Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).  Plaintiff was physically in California at the time he received the alleged text messages from Defendant.

13.     Plaintiff is informed and believes, and thereon alleges, that Defendant is a mortgage loan provider incorporated in the state of Michigan.  Defendant, and all of its agents, are and at all times mentioned herein were "persons," as defined by 47 U.S.C. § 153 (39). Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of Riverside, and within this judicial district.

## FACTUAL ALLEGATIONS

14.     At all times relevant, Plaintiff was a citizen of Riverside County, and a citizen of the State of California.  Plaintiff is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (39).

15.     Defendant is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153 (39).

16.     At all times relevant Defendant conducted business in the State of California and in the County of Riverside, within this judicial district.

17.     On or about July 11, 2022, Plaintiff received a text message from Defendant on his cellular telephone number ending in -3890.

18.     Specifically, the text message read:

> Hello! This is Eric Decuyper, from Rocket Mortgage. As the #1 lender in America, we are running a special for the lowest rate and fee combination the market has to offer. When do you have 5 minutes to chat?

19. Defendant did not have Plaintiff's prior express consent to contact him on his cellular phone.

20. Based on the content and format of these text messages, Plaintiff alleges that they were sent via Defendant's SMS Blasting Platform, i.e., an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A).

21. The text message sent to Plaintiff's cellular telephone was not sent by a live agent and thus created a one-sided conversation in which Plaintiff could not receive a response to his questions and/or concerns. The text message also was sent in an automated fashion as a result of computerized campaigns that were pre-programmed in advance to send messages out to large groups of consumers all at once, either sequentially or via algorithmic dialing, i.e. in an automated fashion by a computer.

22. In Merriam Webster's Dictionary, "voice" is defined as "an instrument or medium of expression." It defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality."

23. The messages sent to Plaintiff by Defendant using the SMS blasting platform employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e. that of an SMS message, to convey a telemarketing communication to Plaintiff. SMS blasting platforms are man-made humanly contrived programs which allow companies to blast out such messages via non-spontaneous methods, i.e. automated methods

similar to that of an assembly line in a factory.  Such SMS blasting devices are incapable of spontaneity, as they must be programmed by the operator to automatically send messages out, *en masse*, pursuant to preprogrammed parameters.

24.     Accordingly, Defendant's messages utilized an "artificial voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

25.     In Merriam Webster's Dictionary, "prerecorded" is defined as "recorded in advance."  "Recorded" is defined as "to set down in writing."  The text message sent to Plaintiff's cellular telephone via an SMS blasting platform was set down in writing in advance by Defendant, whose employees wrote out the standard automated messages that were to be sent to Plaintiff and other class members, and by way of preprogrammed SMS blasting, entered the prerecorded message into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendant. Thus, Defendant employed a text message as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

26.     Thus, Defendant's messages utilized a "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

27.     Additionally, Defendant placed numerous telephone calls to Plaintiffs cellular phone using an ATDS as defined by 47 U.S.C. § 227(a)(1), including but not limited to phone calls placed on December 9, 2021, and December 10, 2021.

28.     The telephone number that Defendant, or their agent texted and called was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming texts and calls pursuant to 47 U.S.C. § 227 (b)(1).

29.     These calls and text messages constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

30.     Plaintiff was never a customer of Defendant and never provided his cellular telephone number to Defendant for any reason whatsoever. Accordingly, Defendant and their agents never received Plaintiff's prior express consent to receive unsolicited calls and text messages, pursuant to 47 U.S.C. § 227 (b)(1)(A).

31.     Such calls and text messages constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

32.     These calls and text messages by Defendant, or its agents, violated 47 U.S.C. § 227(b)(1).

33.     Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone numbers, to Defendant for any purpose whatsoever.  In addition, Plaintiff told Defendant at least once to stop contacting them and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant contacting him. Accordingly, Defendant never received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on their cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on behalf of himself and on behalf of and all others similarly situated, as a member of the two proposed Classes (together, "the Classes").

35.     Plaintiff represents, and is a member of, the ATDS Class, defined as follows: all persons within the United States who received any unsolicited calls or text messages sent using an ATDS or an artificial or prerecorded voice from Defendant, which text message was not made for emergency purposes or with the recipient's prior express consent within the four years prior to the filing of the Complaint through the date of class certification.

36.     Plaintiff also represents, and is a member of, the DNC Class, defined as follows: all persons within the United States registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendant prior express consent not had a prior established business relationship, who received more than one phone call or text message from or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the Complaint through the date of class certification.

37.     Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Classes' members number in the thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

38.     This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

39.     The joinder of the members of the Classes is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The Classes can be identified through Defendant's records or Defendant's agents' records.

40.     Plaintiff and members of the ATDS Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through their agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using marketing calls and text messages, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members.  Plaintiff and the Class members were damaged thereby.

41.     There is a well-defined community of interest in the questions of law and fact involved affecting the ATDS Class members.  The questions of law and fact common to the ATDS Class predominate over questions which may affect individual Class members, including the following:

a)     Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendant or their agents made any calls or text messages (other than those made for emergency purposes or made with the prior express consent of the called party) to an ATDS Class member using any automatic dialing system or artificial or prerecorded voice to any telephone number assigned to a cellular phone service;

b)     Whether Plaintiff and the ATDS Class members were damaged thereby, and the extent of damages for such violation; and

c)     Whether Defendant and their agents should be enjoined from engaging in such conduct in the future.

42.     As a person that received at least one solicitation call and text message without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the ATDS Class.  Plaintiff will fairly and adequately represent and protect the interests of the ATDS Class in that Plaintiff has no interests antagonistic to any member of the ATDS Class.

43.     Plaintiff and members of the DNC Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiff and the DNC Class members via their cellular telephones for solicitation purposes, thereby invading the privacy of Plaintiff and the DNC Class members whose telephone numbers were on the National Do-Not-Call Registry. Plaintiff and the DNC Class members were damaged thereby.

44.     There is a well-defined community of interest in the questions of law and fact involved affecting the DNC Class members. The questions of law and fact common to the DNC Class predominate over questions which may affect individual DNC Class members, including the following:

a. Whether, within four years prior to the filing of the complaint through the date of class certification, Defendant or its agents made more than one solicitation call to the members of the DNC Class whose telephone numbers were on the National Do-Not-Call Registry for over thirty days and who had not granted prior express consent to Defendant and did not have an established business relationship with Defendant;

b. Whether Defendant obtained prior express written consent to place solicitation calls to Plaintiff's or the DNC Class members' telephones;

c. Whether Plaintiff and the DNC Class members were damaged by Defendant's conduct, and the extent of damages for such violation; and

d. Whether Defendant and its agents should be enjoined form engaging in such conduct in the future.

45.     As a person whose phone number was registered on the National Do-Not-Call Registry for at least thirty days, did not give Defendant express prior consent and did not have a prior business relationship with Defendant, but received more than one call or text message on behalf of Defendant during the applicable period, Plaintiff is asserting claims that are typical of the DNC Class. Plaintiff will fairly and adequately represent and protect the interests of the DNC Class in that Plaintiff has no interests antagonistic to any member of the DNC Class.

46.     Plaintiff and the members of the Classes have suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Classes will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.  Because of the size of the individual member's claims, few, if any, members of the Classes could afford to seek legal redress for the wrongs complained of herein.

47.     Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

48.     A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce

Defendant to comply with federal and California law.  The interest of the Classes' members in individually controlling the prosecution of separate claims against Defendant are small because the maximum statutory damages in an individual action for violation of privacy are minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

49.    Defendant has acted on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole.

### FIRST CAUSE OF ACTION
### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(B)
### ON BEHALF OF THE ATDS CLASS

50.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

51.    The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

52.    As a result of Defendant's negligent violations of 47 U.S.C. § 227(b), Plaintiff and ATDS Class members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

53.    Plaintiff and ATDS Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(B)
### ON BEHALF OF THE ATDS CLASS

54.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

55.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

56.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and ATDS Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

57.     Plaintiff and ATDS Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### THIRD CAUSE OF ACTION
### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(C)
### ON BEHALF OF THE DNC CLASS

59.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

61.     As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff and the DNC Class members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

62.     Plaintiff and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### FOURTH CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER
### PROTECTION ACT
### 47 U.S.C. § 227(C)
### ON BEHALF OF THE DNC CLASS

63.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

64.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

65.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the DNC Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

Plaintiff and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff, and members of the Classes, the following relief against Defendant:

### FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF
### THE TCPA, 47 U.S.C. § 227(B)

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each ATDS Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

- Any other relief the Court may deem just and proper.

### SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227(B)

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each ATDS Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

### THIRD CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227(C)

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(c)(5), Plaintiff seeks for himself and each DNC Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).
- Pursuant to 47 U.S.C. § 227(c)(5)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

### FOURTH CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227(C)

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c)(5), Plaintiff seeks for himself and each DNC Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).
- Pursuant to 47 U.S.C. § 227(c)(5)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

**TRIAL BY JURY**

66.     Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: July 28, 2022                                    Respectfully submitted,

**THE LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By:   s/ Todd M. Friedman
                                        TODD M .FRIEDMAN, ESQ.
                                        ADRIAN R. BACON, ESQ.
                                        ATTORNEY FOR PLAINTIFF